IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHICAGO TITLE INSURANCE COMPANY,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-3163 |
| **RAUL DELGADO**, *et al*., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

In this case involving a real estate transaction, Chicago Title Insurance Company ("Chicago Title") sued Raul and Zulma Delgado for damages under theories of unjust enrichment and breach of special warranty. ECF 1. Chicago Title alleges that, in 2005, it provided title insurance to the buyers of the Delgados' property. Years after the sale, Chicago Title learned there was a lien against the property because the Delgados had not paid off a home equity loan that they had obtained in 2003. Chicago Title paid off the balance of the loan to release the lien, and the Delgados refused its request for reimbursement. The Delgados move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF 11. Chicago Title has opposed the motion to dismiss. ECF 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the following reasons, the motion to dismiss is denied.

**I.  Background**

Chicago Title alleges the following facts. On June 1, 2000, Raul and Zulma Delgado obtained the title to real property located in Silver Spring, Maryland. ECF 1, ¶ 7; ECF 1-1. On May 14, 2003, the Delgados received a $100,000 home equity line of credit loan from Countrywide

Bank ("Countrywide Loan"). ECF 1, ¶ 8. As security for the Countrywide Loan, the Delgados executed a deed of trust conveying a lien against the property ("Countrywide Deed of Trust"). *Id.* The Countrywide Deed of Trust was recorded in the land records for Montgomery County on September 15, 2003. *Id.*; ECF 1-2.

On April 15, 2005, the Delgados sold the property to Thomas and Susan Koutsky. ECF 1, ¶ 9. The deed included a special warranty. *Id.* In connection with the sale, Chicago Title, a title insurance company organized under the laws of Florida, issued a title insurance policy to the Koutskys insuring that the property was free from encumbrances, including any defect in title created by the Delgados. *Id.* ¶¶ 1, 10, 20. At the time the Koutskys purchased the property, the Delgados had not satisfied the Countrywide Loan or obtained a release of the Countrywide Deed of Trust. *Id.* ¶ 10.

In August 2021, Fay Servicing LLC ("Fay Servicing"), the beneficiary of the Countrywide Deed of Trust, informed Chicago Title that a balance was owed on the Countrywide Loan. *Id.* ¶¶ 11–12. Fay Servicing threatened to file a foreclosure action against the Koutskys if the balance was not paid. *Id.* ¶ 11. In November 2021, pursuant to its obligations under the Koutskys' title insurance policy, Chicago Title paid $112,823.84 to Fay Servicing in exchange for a release of the Countrywide Deed of Trust. *Id.* ¶ 13. Chicago Title, in turn, demanded reimbursement from the Delgados. *Id.* ¶ 14. The Delgados refused. *Id.* Chicago Title filed this lawsuit on December 7, 2022. This motion followed.

## II.     Standard of Review

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether the Court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). "Federal courts are courts of limited

jurisdiction[,]" possessing "only that power authorized by Constitution and statute." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  The plaintiff, as the party asserting jurisdiction, bears the burden of establishing it.  *Id.*  Generally, a Rule 12(b)(1) challenge "may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'"  *Chambliss v. Carefirst, Inc*, 189 F. Supp. 3d 564, 568 (D. Md. 2016). (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  Against a facial challenge, the plaintiff "is afforded the same procedural protections as [s]he would receive under a Rule 12(b)(6) consideration[.]"  *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013) (quoting *Kerns*, 585 F.3d at 192).  Dismissal for lack of subject matter jurisdiction is proper "where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis*, 367 F. Supp. 2d at 799 (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).  When presented with a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction."  *Kerns*, 585 F.3d at 192.  To do so, the Court "may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts."  *Id.* at 193.

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted."  *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the

defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

**III.     Discussion**

    **A.  Subject Matter Jurisdiction**

Federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). The Delgados argue that Chicago Title has not alleged an amount in controversy over $75,000 and that there is no diversity of citizenship between the parties.

### 1. Amount in Controversy

"In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed.'" *Id.* (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288). "A mere dispute over the mathematical accuracy of a plaintiff's damages calculation does not constitute such a showing." *Id.*

Chicago Title alleges $112,823.84 in damages, the amount it paid to Fay Servicing in exchange for a release of the Countrywide Deed of Trust. The Delgados argue that a portion of the $112,823.84 was interest and that the amount in controversy must be "exclusive of interest."[1] But § 1332(a) does not require the exclusion of all forms of interest. *Rifkind v. Wells Fargo Clearing Servs., LLC*, No. GLR-21-1838, 2022 WL 279825, at *5 n.12 (D. Md. Jan. 31, 2022) (citing *Brown v. Webster*, 156 U.S. 328, 329 (1895)). Interest may be included in the amount in controversy when it is an integral part of the damages and "is itself the basis of the suit." *Md. Nat'l Bank v. Nolan*, 666 F. Supp. 797, 798 (D. Md. 1987). Wright and Miller explain:

> The apparent purpose of excluding interest in computing the jurisdictional amount is to prevent the plaintiff from delaying suit until the substantive claim, with accruing interest, exceeds the statutory minimum. Thus, interest uniformly is excluded under the rule of *Brown v. Webster*, if it is only incidental to the claim the plaintiff is asserting or if it arises solely by virtue of a delay in the payment of an obligation. Interest is not excluded, however, if it is itself the basis of the suit and part of the obligation. Thus, . . . interest due on other forms of interest bearing instruments should be includible for amount in controversy purposes. Thus, it has been held that interest on a note prior to maturity, and therefore payable according

---

[1] Chicago Title argues the Court should presume all of the $112,823.84 is principal, though it acknowledges the payoff statement indicates $66,132,16 in principal and $41,405.69 in interest. ECF 12, at 6 n.5. As the Court explains, it is irrelevant what portion of the balance was interest.

> to the terms of the note, is a part of the amount in controversy, even though interest accruing after maturity would not be.

14AA Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3712 (4th ed.).  Put simply, impermissible "[i]nterest for purposes of § 1332(a) is a sum that becomes due because of delay in payment." *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988) (per curiam) (citing *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473–71 (1st Cir. 1979)).  Interest payable on a loan that accrues before maturity, on the other hand, may contribute to the jurisdictional amount in controversy.  *See Brown*, 156 U.S. at 329–30 (holding interest that is a basis for the suit is included in amount in controversy); *Cleartrac, LLC v. Lanrick Contractors, LLC*, 53 F.4th 361, 365–68 (5th Cir. 2022) (holding interest that is part of the principal claim is included in amount in controversy); *Bell v. Sec. Fin. Grp., Inc.*, No. HAR-90-271, 1990 WL 86352, at *2 (D. Md. June 20, 1990) (holding the principal amount of a loan, "along with the accumulated interest . . . , is the full amount in controversy under the note").

Here, the Countrywide Loan required "the repayment of the debt evidenced by the Agreement, *with interest* . . . ."  ECF 1-2, at 1 (emphasis added).  Chicago Title paid the balance due on the Countrywide Loan, including interest.  The interest is integral to Chicago Title's damages claim and part of the basis for this lawsuit, and it is properly included in the amount in controversy.  Chicago Title's alleged damages of $112,823.84, the amount it paid to satisfy the Countrywide Loan, exceeds the $75,000 amount in controversy requirement for diversity jurisdiction.

### 2. Diversity of Citizenship

Turning to the diversity of citizenship requirement, the Delgados, who are Maryland citizens, argue Chicago Title is also a Maryland citizen, which, if true, would defeat diversity jurisdiction.  A corporation is deemed a citizen "of every State . . . by which it has been

incorporated and of the State . . . where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1); *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011). A corporation's principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). To determine the principal place of business, courts consider where the corporation maintains its headquarters and the extent to which the headquarters functions as a "nerve center" for the corporation. *Id.*

Chicago Title alleges it is a Florida corporation. In support of this allegation, it submitted a printout of online records from the Florida Department of State's Division of Corporations that identify it as a "Florida Profit Corporation." ECF 12-1. It also submitted an affidavit from an authorized agent of the company who swears Chicago Title is a Florida corporation with its principal place of business in Florida and is not a Maryland corporation. ECF 12-2, ¶ 3. For their part, the Delgados submitted a printout from the Maryland State Department of Assessment and Taxation website. ECF 11-2. Rather than support the Delgados' argument, the printout identifies Chicago Title as a "foreign corporation." *Id.* at 1. While it also indicates Chicago Title has filed personal property tax returns in Maryland, that does not mean Chicago Title is a Maryland corporation, as the Delgados argue. Maryland requires all legal business entities, including foreign corporations, to file returns, alongside annual reports, if certain requirements are met. Md. Code Ann., Tax–Prop. §§ 11-101, 11-102; Md. Code Ann., Corps. & Ass'ns § 7-304.[2]

---

[2] The Delgados also assert Chicago Title incorporated in Maryland in 1977. The Maryland printout includes a single entry under "filing history" that is dated December 27, 1977, but the records for that entry state only "no amendment information." ECF 11-2, at 2. To the extent the entry supports the Delgados' argument, it is contradicted by the same records' identification of Chicago Title as a foreign corporation.

Finally, the Delgados argue that Chicago Title is a Maryland citizen because it "chose to insure a Maryland property and sell its title insurance to Maryland residents." ECF 12, at 5. But "the mere fact that [a company] does business in Maryland *as a foreign corporation* does not make Maryland the company's principal place of business, and therefore would not destroy diversity jurisdiction." *Johnson v. Nutrex Research, Inc.*, 429 F. Supp. 2d 723, 725 (D. Md. 2006).

The Court concludes that Chicago Title is a Florida citizen. The parties are diverse, and Chicago Title has established subject matter jurisdiction.

## B. Failure to State a Claim

The Delgados alternatively move to dismiss for failure to state a claim upon which relief can be granted. They argue Chicago Title fails to allege the elements of unjust enrichment and that both claims are time-barred.

### 1. Unjust Enrichment Allegations

Under Maryland law, unjust enrichment consists of three elements: (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (citing *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)).

Chicago Title alleges it conferred a benefit on the Delgados by paying the balance they owed on the Countrywide Loan. Regarding the Delgados' appreciation and retention of the benefit, Chicago Title alleges it notified them of the payoff and demanded reimbursement, but they refused. Chicago Title alleges the Delgados' refusal to reimburse it for the amount it paid to satisfy their debt amounts to their inequitable retention of a benefit.

This case is factually analogous to *Hill*. In *Hill*, the buyer of a property engaged the plaintiff to conduct the closing. 936 A.2d at 348. As part of its engagement, the plaintiff issued a title insurance policy as an agent of the title insurer. *Id.* at 349. Due to a series of errors and apparent miscommunications, the seller received the sale proceeds without any deduction for an outstanding home equity loan. *Id.* When the lender later instituted foreclosure proceedings against the buyer, the title insurer paid the outstanding balance and made a demand upon the plaintiff for the same amount. *Id.* The plaintiff paid the title insurer and filed suit against the seller, claiming unjust enrichment. *Id.* at 349–50. On appeal, the Maryland Supreme Court addressed each element of unjust enrichment. The court held that satisfaction of the seller's debt could constitute a benefit, if the seller in fact was liable for the debt, *id.* at 353–54; that the essence of the appreciation element "is that the defendant have an opportunity to decline the benefit," which happened when the seller refused to reimburse the plaintiff, *id.* at 354–55; and that, while an officious or volunteer benefactor cannot recover for the conferral of an unwanted benefit, a plaintiff does not act officiously if it "acts under a legal compulsion or duty, acts under a legally cognizable moral duty, acts to protect his or her own property interests, acts at the request of the defendant, or acts pursuant to a reasonable or justifiable mistake as to any of the aforementioned categories[,]" *id.* at 301–305. These principles inform the Court's analysis.

The Delgados lodge three attacks on the unjust enrichment claim, none of which is persuasive. First, they argue no benefit was conferred because the Countrywide Loan was "well past the statute of limitations and subject to defenses." ECF 11-1, at 6. This argument may amount to a viable defense to the unjust enrichment claim. *See Hill*, 936 A.2d at 354 (stating "if [debtor] should be determined not to be liable to [lenders] in an action brought directly against [debtor], [debtor] received no benefit as [the plaintiff] paid a debt that [debtor] did not owe"). But at this

9

stage, the Court cannot consider its merits because it is not clear from the face of the complaint that the underlying debt was time-barred or that the Delgados otherwise could have avoided repayment of the loan. The Delgados do not identify the applicable statute of limitations, explain what other defenses they could have asserted, or attempt to connect their argument to the allegations in the complaint. Even if the argument may prove viable later, for now, it lacks support.

Second, the Delgados argue they did not appreciate the benefit because Chicago Title did not notify them before paying off the loan. *Hill* rejected a similar argument, reasoning that "[w]hen the benefit conferred is money, there is no requirement that a defendant necessarily have knowledge or appreciation of the benefit precisely at the time the benefit is conferred." 936 A.2d at 354. This is so because money is fungible and, thus, always can be returned. As the *Hill* Court explained, the essence of the appreciation element "is that the defendant have an opportunity to decline the benefit," and "when a defendant declines a plaintiff's request to return a conferred benefit, the defendant has been afforded a fair opportunity to reject the benefit, and thus, recovery may be permitted." *Id.* at 354–55.[3] The Delgados could have returned the alleged benefit in this case by reimbursing Chicago Title for the payoff amount. Their decision not to do so satisfies the second unjust enrichment element.

Finally, the Delgados argue they did not retain the benefit because they disapprove of Chicago Title's decision to pay the debt before they could assert their unidentified defenses against it. Properly framed, this argument asserts Chicago Title acted officiously and without the Delgados approval, so their retention of the benefit—their refusal to reimburse Chicago Title—is

---

[3] The defendant in *Hill* received advance notice before the plaintiff paid its debt, but the court did not rely exclusively on that fact in concluding the defendant appreciated the benefit. 936 A.2d at 354–55. Rather, the court found the second unjust enrichment element satisfied for the independent reason that the defendant had declined to return the conferred benefit. *Id.*

10

not unjust. Here too, *Hill* addressed a similar argument. The defendant in that case argued the plaintiff "could have avoided enforcement of any asserted liability owed to [the lender] by asserting" a defense against the debt. *Id.* at 355. As explained above, the court noted officious payors generally cannot recover in unjust enrichment, but a payor is not officious when it "acts under a legal compulsion or duty" or "pursuant to a reasonable or justifiable mistake" as to the existence of such a duty. *Id.* at 357. Here, Chicago Title alleges such a legal duty in the form of its obligations under the title insurance policy held by the Koutskys. At the very least, it has alleged grounds for a justifiable belief that it had such a legal duty. Discovery may prove otherwise, but drawing all reasonable inferences in Chicago Title's favor, the Court concludes Chicago Title has alleged the third element of unjust enrichment.

### 2. Statute of Limitations

The Delgados argue both Chicago Title's claims are time-barred because they arise out of the April 2005 real estate transaction and the associated deed. Affirmative defenses, such as the statute of limitations, are not typically within the scope of a Rule 12(b)(6) motion, but the Court may reach the question "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis deleted).

Under Maryland law, a civil action must "be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Relevant here, one of the exceptions to the general statute of limitations provides for a 12-year limitations period for

11

actions on certain "specialties," such as "a legal instrument under seal." *Wellington Co. Profit Sharing Plan & Trust v. Shakiba*, 952 A.2d 328, 343 (Md. Ct. Spec. App. 2008) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-102). Under either statute, the limitations period "begins upon the occurrence of the alleged wrong, unless there is a legislative or judicial exception which applies." *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 236 (Md. 2011) (citing *Poffenberger v. Risser*, 431 A.2d 677, 679 (Md. 1981)).

Chicago Title filed suit on December 7, 2022. Unjust enrichment claims in Maryland are subject to the three-year statute of limitations. *See Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421, 428 (Md. Ct. Spec. App. 2016). Thus, Chicago Title's unjust enrichment claim is barred if it is apparent from the face of the complaint that the claim accrued before December 7, 2019. The Delgados argue the unjust enrichment claim accrued when they sold the property in April 2005. They suggest that date is when they purportedly were unjustly enriched because they received more proceeds from the sale than they were entitled to in light of the outstanding loan debt. Once again, *Hill* refutes the Delgados' argument. The court in that case rejected the suggestion that the "consummation of the real estate closing" constituted the conveyance of a benefit. *Hill*, 936 A.2d at 353. At the same time, the court recognized the "payment of the debt of another constitutes a benefit conferred, and thus may satisfy the first element of an unjust enrichment claim." *Id.* Under *Hill*, Chicago Title conferred a benefit on the Delgados when it paid the balance due on the Countrywide Loan. That payment occurred in November 2021. "[A] cause of action does not accrue until all of its elements are present." *Catler v. Arent Fox, LLP*, 71 A.3d 155, 171 (Md. Ct. Spec. App. 2013) (citing *Doe v. Archdiocese of Wash.*, 689 A.2d 634, 638–39 (Md. Ct. Spec. App. 1997)). Thus, the unjust enrichment claim did not accrue until November 2021 at the earliest. Chicago Title filed suit within three years of that date, so the unjust enrichment claim is timely.

As for the breach of special warranty claim, Chicago Title argues for application of the 12-year statute of limitations. Maryland courts apply a two-step inquiry to determine whether the 12-year limitations period under § 5-102 applies to an action: "(1) Is the [instrument] a specialty? (2) Is the cause of action 'on' the specialty?" *Columbia Ass'n, Inc. v. Poteet*, 23 A.3d 308, 315 n.5 (Md. Ct. Spec. App. 2011) (quoting *Wellington Co.*, 952 A.2d at 344). A "legal instrument under seal" is one kind of specialty. *Wellington Co.*, 952 A.2d at 343. A pre-printed legal instrument signed by an individual is "under seal" if it includes the word "seal" near the signature line. *Columbia Ass'n Inc.*, 23 A.3d at 315–16. Here, the April 2005 deed states above the Delgados' signatures: "WITNESS my/our hand(s) and seal(s) on the day and year first hereinbefore written. Signed, sealed and delivered . . . ." ECF 1-3, at 2. The inclusion of the words "seal" and "sealed" above the Delgados' signatures renders the April 2005 deed a specialty for purposes of § 5-102. As for the second inquiry, there is no question the breach of special warranty claim is "on" the April 2005 deed. The special warranty the Delgados allegedly breached is contained in the April 2005 deed. Thus, the breach of special warranty claim is subject to Maryland's 12-year statute of limitations. It is time-barred if it accrued before December 7, 2010.

The Delgados assert the breach of special warranty claim accrued, and the statute of limitations began, when the deed was executed in April 2005 because that is when the wrong occurred. Chicago Title argues the "discovery rule," an exception to the general accrual rule, applies. The discovery rule delays the start of the limitations period until the date when the plaintiff "knew or reasonably should have known of the wrong." *Cain v. Midland Funding, LLC*, 256 A.3d 765, 783 (Md. 2021) (quoting *Poffenberger*, 431 A.2d at 680). Under the discovery rule, the "relevant inquiry . . . is when a plaintiff knew or reasonably should have known of the operative facts giving rise to the cause of action, not whether a plaintiff had knowledge of the applicable

13

law." *Id.* at 784 (quoting *Crowder v. Master Fin., Inc.*, 933 A.2d 905, 921 (Md. Ct. Spec. App. 2007), *aff'd in part, rev'd in part*, 972 A.2d 864 (Md. 2009).  The discovery rule does not require actual knowledge of the facts giving rise to the cause of action and is satisfied when the plaintiff is on "inquiry notice" by virtue of possessing actual knowledge of "facts sufficient to cause a reasonable person to investigate further," where "a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort." *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1104 (Md. 2004); *see also Estate of Adams v. Continental Ins. Co.*, 161 A.3d 70 (Md. Ct. Spec. App. 2017).

Application of the discovery rule proceeds in two steps.  First, courts consider "the sufficiency of the actual knowledge to put the claimant on inquiry notice," assessing "the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained." *Georgia-Pac. Corp. v. Benjamin*, 904 A.2d 511, 529 (Md. 2006).  Actual knowledge includes both express knowledge, "whether written or oral, from sources cognizant of the facts," and implied knowledge, as "when a plaintiff gains knowledge sufficient to prompt a reasonable person to investigate further," but not constructive knowledge.  *Id.* (internal quotation marks and citations omitted).  At the second step, courts consider "the sufficiency of the knowledge that would have resulted from a reasonable investigation," assessing whether "after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing."  *Id.*

The Delgados argue the discovery rule cannot save the breach of special warranty claim.  They claim Chicago Title and the Koutskys were on inquiry notice of the lien at the time of closing because Chicago Title alleges the Countrywide Deed of Trust was recorded among the land records

14

for Montgomery County in 2003.[4] *See* ECF 1, ¶ 8.  The Maryland Supreme Court rejected a similar argument more than 40 years ago in *Poffenberger*.  431 A.2d at 680–81.  In that case, the court reversed a grant of summary judgment that had been based on the statute of limitations.  *Id.* at 681.  The issue was whether the undisputed existence of plats and deeds among the county land records triggered the discovery rule.  *Id.* at 680.  The court assumed the land records gave rise to constructive notice of the injury, but it held constructive notice did not trigger the discovery rule.  *Id.*  It distinguished constructive notice, which "rest[s] upon strictly legal presumptions," from "implied notice," which "arises from inference of fact."  *Id.* (quoting *Baltimore v. Whittington*, 27 A. 984, 985 (Md. 1893)).  It concluded that if knowledge imputed by constructive notice were "deemed to be sufficient to activate the running of limitations, [it] would recreate the very inequity the discovery rule was designed to eradicate[.]"  *Id.* at 681.  Accordingly, the Court cannot conclude from the mere fact that the Countrywide Deed of Trust allegedly was recorded in the county land records that Chicago Title and the Koutskys had actual knowledge of the lien sufficient to trigger the limitations period in April 2005.

The Delgados cite *Bacon v. Arey*, 40 A.3d 435 (Md. Ct. Spec. App. 2012), in support of their argument that the county land records give rise to inquiry notice, but that case does not support the application of the discovery rule in this context.  In *Bacon*, a landowner claimed entitlement to an easement along a historic road.  *Id.* at 442.  The road ran North–South, and the landowner alleged the defendants had developed their land in a way that eliminated access to the road from the North.  *Id.* at 443.  On appeal, the court affirmed the dismissal of the landowner's

---

[4] Because the breach of special warranty claim is based upon Chicago Title's rights as subrogee of the Koutskys, the Koutskys' knowledge is relevant to the statute of limitations analysis.  *See Anne Arundel Cnty. v. McCormick*, 594 A.2d 1138, 1140 (Md. 1991) ("As a subrogee, the County had no greater rights than its subrogor, and it was bound by the same statute of limitations which governed its employee's action.").

15

claims, which he had filed in 2006, as time-barred. *Id.* at 442–43. The landowner had purchased his property in 2002, and he alleged access to the road "'was permanently cut' in 1994, with the initial approval of [the defendants'] subdivisions, and that northward access . . . was prohibited, in 2001" with the final approval of the subdivisions and the recordation of the associated plat. *Id.* at 443. Based on those allegations, the court held the landowner was on inquiry notice "at the time he purchased the property that he could not use" the historic road. *Id.* at 468. Because the landowner had not alleged that he ever used the road, the court inferred that he knew it was unusable in 2002, so the discovery rule did not delay the accrual of his claims. *Id.*

Along the way, the court discussed "chain of title notice" and stated a subsequent owner "has notice of what is contained in his or her actual chain of title even if he or she has never seen it, heard it, or even imagined that it existed." *Id.* at 467 (quoting *Bright v. Lake Linganore Ass'n, Inc.*, 656 A.2d 377, 393 (Md. Ct. Spec. App. 1995)).[5] But the landowner's chain of title was not the basis for the court's holding in *Bacon*. Indeed, the court found that the plat was not in the landowner's chain of title. *Id.* Rather, the court's decision "depended on the fact that— independent of what was in the plaintiff's chain of title—the plaintiff was on inquiry notice because of the alleged elimination of northern access." *Rounds v. Md.–Nat'l Cap. Park & Planning Comm'n*, 75 A.3d 987, 1002 n. 17 (Md. Ct. Spec. App. 2013), *aff'd in part, rev'd in part*, 109 A.3d 639 (Md. 2015). In other words, it was the landowner's allegations that the road had been cut off for years that allowed the court to infer he was on inquiry notice and prevented him from taking advantage of the discovery rule. *Id.* There are no similar allegations here to permit an inference that Chicago Title or the Koutskys were aware of the lien more than 12 years before

---

[5] "Chain of title notice" is constructive notice. *See Bright*, 656 A.2d at 393 (stating land records "afforded constructive notice"). *Bright* did not concern the discovery rule and is entirely consistent with *Poffenberger*.

Chicago Title filed suit. At this early stage, the Court cannot conclude the breach of special warranty claim is untimely.

## IV.    Conclusion

Chicago Title has alleged unjust enrichment, and the Court cannot conclude from the face of the complaint that its claims are time-barred. The motion to dismiss is denied.

Date: July 14, 2023

                                                                                    _____
                                                                                    Deborah L. Boardman
                                                                                    United States District Judge